UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.: 2:16-cv-00407

MARCIA GALLE,

    Plaintiff,

v.

NATIONSTAR MORTGAGE LLC,

    Defendant.

_____/

# DEFENDANT NATIONSTAR MORTGAGE LLC'S
# MOTION TO DISMISS COMPLAINT

## I. OVERVIEW

Defendant Nationstar Mortgage LLC (**Nationstar**) moves to dismiss plaintiff Marcia Galle's complaint because Nationstar's did not improperly attempt to collect a discharged debt. This case centers on whether Nationstar took improper actions to collect on a debt in violation of 15 U.S.C. § 1692, *et seq.* (**FDCPA**) and FLA. STAT. § 559.55, *et seq.* (**FCCPA**). (ECF No. 1, ¶ 2).[1] Plaintiff alleges that by sending her monthly statements, Nationstar improperly attempted to collect a debt. Her claims misapprehend 15 U.S.C. § 1692, *et seq.* and FLA. STAT. § 559.55, *et seq.*, specifically what constitutes the collection of a debt. Her claims also misapprehend 11 U.S.C. § 524 and the effect of a discharge order on a residential mortgage. The discharge order did not extinguish the mortgage debt or eliminate the underlying mortgage lien. And each communication included a disclaimer that, to the extent Plaintiff had received a bankruptcy discharge, the information presented was for informational purposes only and not demanding

---

[1] Per plaintiff, her loan was discharged in bankruptcy and the claims alleged here arose after. (ECF No. 1, ¶¶ 9-15).

payment. Plaintiff has failed to state claims for improper debt collection in violation of the FDCPA or FCCPA.

Plaintiff's FDCPA and FCCPA claims are also precluded or preempted. The Truth in Lending Act (**TILA**) requires servicers to send periodic statements containing certain required fields, such as amounts due, to debtors even after they receive a discharge. Because Nationstar was required to send the statements, and Nationstar sent them in the approved form, any debt collection claim based on those statements would be either precluded or preempted by TILA.

11 U.S.C. § 524 also precludes or preempts Plaintiff's FDCPA and FCCPA claims, as the claims are entirely based on Nationstar's alleged violation of the discharge injunction, and necessarily require interpretation of 11 U.S.C. § 524, and its effect on Plaintiff's mortgage. In fact, the same bankruptcy judge that presided over plaintiff's bankruptcy has recently ruled that Nationstar statements containing the very same disclaimer do not constitute debt collection activity in violation of the discharge injunction. The Bankruptcy Code and FDCPA would be rendered repugnant to one another if the very same statement that was held to not constitute improper debt collection in violation of a discharge was then held to be unlawful debt collection under the FDCPA – when the only thing purportedly making the statement unlawful under the FDCPA in the first place is the effect of the bankruptcy discharge. Dismissal with prejudice is warranted.

## II. FACTUAL BACKGROUND

On July 14, 2008, plaintiff initiated a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Middle District of Florida, case no. 9:08-bk-10381 (the **Bankruptcy**) (ECF No. 1, ¶ 6). In her bankruptcy schedules, plaintiff listed the property located at 8294 Key Royal Circle,

#1621, Naples, Florida 34119 (**property**) and identified Countrywide as a creditor holding a first mortgage on the property.[2] (ECF No. 1, Ex. B). Plaintiff also stated her intent to surrender the property. (*Id.*, Ex. C). Plaintiff's debts were discharged through the bankruptcy on December 21, 2008. (*Id.*, Ex. F).

Plaintiff's allegations are premised on mortgage loan statements sent by Nationstar informing Plaintiff of the balance on the mortgage which are attached to her complaint (the "**Mortgage Statements**"). (ECF No. 1, Exs. H & J). These mortgage loan statements each include the following disclaimer prominently displayed at the top of the first page:

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

(*Id.*) In her prayer for relief, Plaintiff seeks actual damages, statutory damages, costs of litigation, and attorney's fees.

### III. MEMORANDUM OF LAW

A court reviewing a motion to dismiss under Rule 12(b)(6) accepts the plaintiff's material allegations as true, but conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Smith v. Williams*, 819 F.Supp. 2d 1264, 1269 (M.D. Fla. 2011) (quoting *Iqbal*, 556 U.S. at 678).

---

[2] Bank of America, N.A. assigned the Note to Nationstar Mortgage LLC, effective May 1, 2013. (ECF No. 1, Ex. G).

The legal standard to be applied when evaluating a motion to dismiss is one of plausibility—"a complaint must state a claim that is plausible on its face" and incorporate "sufficient factual matter" in support of the claim. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 687 ("Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."). Rather, for a claim to be facially plausible, a plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

A.  **Plaintiff Fails To Allege Improper Conduct Under the FDCPA and FCCPA.**

Plaintiff's collection violations are based on monthly statements. (*See generally* ECF No. 1). This alleged conduct falls outside of "debt collection" necessary to sustain violations under the FDCPA and FCCPA. *Marshall v. Deutsche Bank Nat. Trust Co.*, No. 4:10CV00754-BRW (E.D. Ark. Feb. 1, 2011) (denying collections-based claims and noting, "letters regarding loan modification were attempts to restructure the debt instrument and lower the payments, not a demand for payment," and "[a] loan statement is essentially a communication from a creditor to a debtor, not a communication from a debt collector for purposes of collecting a debt."); *see also Bailey v. Security National Servicing Corporation*, 154 F.3d 384, 389 (7th Cir. 1998) (holding that a letter which "merely inform[ed] plaintiffs] about 'the current status' of their account, did not 'fall under the ambit'" of the FDCPA).[3] As an added buffer, the disclaimers in the statements at

---

[3] "[T]o hold that a secured creditor is precluded from sending monthly billing statements to a debtor . . . would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors. This could not be Congress's intent passing 11 U.S.C. § 524(a)(2)." *Ramirez v. GMAC (In re Ramirez)*, 280 B.R. 252, 258 (C.D. Cal. 2002).

4

issue note that each communication is for informational purposes only and is not an attempt to collect a debt. *See Pultz v. NovaStar Mortg., Inc. (In re Pultz)*, 400 B.R. 185, 190 (Bankr. D. Md. 2008) (dismissing claims under the FDCPA and Maryland Consumer Debt Collection Act, noting that "[t]he [notice] was required by the contract itself, and contained a conspicuous disclaimer that it did not create personal liability because the debtor had filed bankruptcy."); *cf. Hasbun v. Recontrust Co., N.A.*, 508 Fed. Appx. 941 (11th Cir. 2013) (in exercising its right to foreclose the surviving mortgage, servicer may send a contractually-required notice of intent to foreclose specifying the amounts due provided it states payment is not demanded); *In re Mele*, 486 B.R. 546, 557 (Bankr. N.D. Ga. 2013).

### i. FDCPA Claim Fails as a Matter of Law.

"A prima facie claim under the FDCPA requires the following: (1) the plaintiff was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as that term is defined under the FDCPA,[4] and (3) the defendant engaged in an activity that is prohibited by the FDCPA." *Helman v. Udren Law Offices, P.C.*, 0:14–CV–60808, 2014 WL 7781199, at *2 (S.D. Fla. 2014) (footnote added). To determine whether a communication was made to collect a debt, courts apply a "commonsense inquiry" based on all factors surrounding the communication, including the "purpose and context of the communications." *See Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380, 384-85 (7th Cir. 2010); *see also Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (noting that although an explicit demand for payment is not always necessary for the statute to apply, "the statute does not apply to every communication between a debt collector and a debtor.") (quoting *Gburek*, 614 F.3d at 385).

---

[4] It is unnecessary to analyze whether Nationstar is a "debt collector" under the FDCPA. But, Nationstar does not concede that status, and reserves the right to separately contest it.

5

Courts have consistently analyzed a clear set of factors in making this determination: (1) whether the communication demands payment from the debtor; (2) whether the communication discusses the specifics of the debtor's underlining debt; and (3) whether the purpose of the communication is to inform the debtor of the status of his or her loan or possible available loan workout options. *Id.* Stated differently, to be considered an attempt to collect a debt, "an animating purpose of the communication must be to induce payment by the debtor." *Grden*, 643 F.3d at 173. Plaintiff cannot show any of the correspondence sent by Nationstar had the "animating purpose" of inducing payment. Her claims fail.

### a. The Mortgage Statements Were Not an Attempt to Collect a Debt.

Plaintiff claims the Mortgage Statements were an effort at debt collection in violation of the FDCPA. (ECF No. 1, ¶¶ 2, 32, 40, 46, 54). However, "[a] regular bank statement sent only for informational purposes is ... not an action in connection with the collection of a debt." *Goodin v. Bank of Am.*, N.A., 2015 WL 3866872, at *6 (M.D. Fla. June 23, 2015) (citing *Helman*, 2014 WL 7781199, at *6); *see also In re: Whitmarsh*, 383 B.R. 735, (Bankr. D. Neb. 2008) (emphasis added) (letters sent by loan servicer to debtors did not constitute demands for payment or violate the automatic stay); *Lovegrove v. Ocwen Loan Servicing, LLC*, No. 7:14-cv-00329, 2015 WL 5042913, at *12 (W.D. Va. Aug. 25, 2015) (same); *Marshall v. Deutsche Bank Nat'l Trust Co.*, No. 4:10-CV-00754, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011) (same).

The Mortgage Statements do not demand payment from the Plaintiff. *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1356 (M.D. Fla. 2012). Instead, as evidenced by the disclaimer discussed *infra*, as well as the fact that many of the Mortgage Statements are entitled "Informational Statement," the "animating purpose" of the Mortgage Statements was to provide

6

plaintiff with information about her mortgage account. *Grden*, 643 F.3d at 173. The Mortgage Statements cannot be considered to be debt collection activity.

In *Helman*, the Southern District of Florida considered bank statements substantively identical to the Mortgage Statements at issue, and determined the statements did not constitute debt collection activity. 2014 WL 7781199, at *6. In determining the substantively identical bank statements were not debt collection activity, the court stated:

> Plaintiff also asserts that Defendants engaged in debt collection activity by sending monthly statements to Plaintiff that established, among other things, the balance Plaintiff would be required to pay to satisfy the mortgage on her residence. The monthly statements included, however, the following language: "This statement is sent for informational purposes only ***and is not intended as an attempt to collect, assess, or recover a discharged debt from you. .... If this account is active or has been discharged in a bankruptcy proceeding,*** be advised this communication is for informational purposes only and ***is not an attempt to collect upon a debt.***" Because the monthly statements did not demand payment and instead included express language for persons who had received a bankruptcy discharge . . . the monthly statements in the instant case, as a matter of law, did not constitute debt collection activity.

*Id.* (internal citations omitted) (emphasis in original). The language regarding persons who had received a bankruptcy discharge contained in the Mortgage Statements at issue is **identical** to the bank statements analyzed in *Helman*.

Furthermore, the United States Bankruptcy Court for the Middle District of Florida in *In re Roth*, Case No. 9:10-bk-30383 recently denied a motion for sanctions brought by debtors based on the same factual predicate as the claims in this action, namely that an informational mortgage statement sent after Ms. Roth's Chapter 13 discharge was impermissible debt collection activity. In denying Ms. Roth's motion, the Bankruptcy Court found that the mortgage statement sent to Ms. Roth by Nationstar, was not "an attempt to collect a debt." *See* Transcript of Bankruptcy Court's Ruling Denying Sanctions filed in *Roth v. Nationstar Mortgage LLC*, Case No. 2:15-cv-00783 (M.D. Fla. 2016) at ECF No. 18, Tr. 7:10-12).

7

The Mortgage Statements are not debt collection activity as a matter of law.

### ii. FCCPA Claim Fails as a Matter of Law.

Plaintiff asserts Nationstar violated FLA. STAT. § 559.72(9), again alleging "Defendant authorized and facilitated against the Plaintiff an attempt to collect a debt from the Plaintiff when it knew such debt had been discharged in Plaintiff's bankruptcy and was thus no longer owed." (ECF No. 1, ¶ 32). The FCCPA is patterned after the FDCPA and, like the federal statute, only precludes those communications whose purpose is the collection of a consumer debt. FLA. STAT. § 559.72(9); *Goodin*, 2015 WL 3866872, at *7; *DeFrancesco v. Veripro Solutions Inc.*, No. 2:14-CV-27-FTM-29DNF, 2015 WL 179376, at *2 (M.D. Fla. Jan. 14, 2015) (stating "The FCCPA is construed in accordance with the FDCPA.") (citation omitted). Determining whether the purpose of the communication is to collect a debt depends upon the **content of the communication**. *Id.* Plaintiff's FCCPA claims fail for the same reason the FDCPA claims fail. The Mortgage Statements were not debt collection activity with the ambit of either statute. As discussed *supra*, the Mortgage Statements include a disclaimer concerning debt collection, stating that the communication is for informational purposes only and is not an attempt to collect a debt. (ECF No. 1, Ex. H).

## B. Plaintiff's Claims Are Preempted or Precluded.

### i. 11 U.S.C. § 524 Bars FDCPA and FCCPA Claims.

Even if Plaintiff's claims were properly pled—which they are not—they are preempted or precluded by 11 U.S.C. § 524. Both Plaintiff's FDCPA and FCCPA claims are predicated on the effect of the discharge on her mortgage debt, and attempt to circumvent the fact that no private right of action exists under 11 U.S.C. § 524. Specifically, Plaintiff's claims are predicated on allegations that, "Defendant authorized and facilitated against the Plaintiff an attempt to collect a debt from the Plaintiff when it knew such debt had been discharged in Plaintiff's bankruptcy and

8

was thus no longer owed." (ECF No. 1, ¶¶ 24 & 29 ). Despite her attempts to plead around § 524, these claims are ultimately based on Nationstar's alleged violation of the discharge injunction. *See AT&T Mobility LLC v. Bushman*, 2011 WL 5924666 (S.D. Fla. Sept. 23, 2011) ("The 'nature of a pleading' is determined by its 'substance, not its label.'"). Plaintiff's claims necessarily require interpretation of 11 U.S.C. § 524, and its effect on her mortgage.

The Bankruptcy Code governs the effect of discharges and what can and cannot be done post-discharge. There is no private right of action under § 524. *Guetling v. Household Fin. Servs.*, Inc., 312 B.R. 699, 704 (M.D. Fla. 2004). Attempts to circumvent the lack of a private right of action by recasting a discharge violation as a violation of some other state or federal statute have been rejected. *See Walls v. Wells Fargo Bank*, 276 F.3d 502, 510 (9th Cir. 2002); *but cf. Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); *see also Mears v. LVNV Funding, LLC*, ---B.R.---, 2015 WL 7067856, at *4 (M.D. Fla. 2015); *but see In re Seak*, No. 3:13-bk-5446-PMG, 2015 WL 631578, at *3 (Bankr. M.D. Fla. Jan. 22, 2015). This includes claims for violations of the FDCPA. *Walls*, 276 F.3d at 510 (stating "To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door—a private right of action."). Plaintiff's FDCPA claim is precluded as it is an improper attempt to manufacture a private right of act of action under 11 U.S.C. § 524.

This analysis applies equally to Plaintiff's FCCPA claims, as alternative state court remedies to a post-discharge injunction "conflict with Congress's plan that federal courts enforce § 524 through § 105." *Besette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000); *see also Walls*, 276 F.3d at 510; *but cf. Randolph*, 368 F.3d at 729. "Congress preempted private state law remedies with the discharge injunction in § 524." *Helman*, 2014 WL 7781199, at *7. The Code "governs the field" of bankruptcy law, preempting state law on that basis. *See In re*

9

*Rosenberg*, 471 B.R. 307, 315 (Bankr. S.D. Fla. 2012). Plaintiff's FCCPA claim is preempted by 11 U.S.C. § 524.[5]

### ii. TILA Bars Claims Based on Required and Approved Periodic Statements.

In addition to the Bankruptcy Code's preclusive effect on Plaintiff's claims, her FDCPA/FCCPA claims cannot stand to the extent they are premised on the mere sending of a mortgage statement post-discharge after January 10, 2014. TILA requires Nationstar to send mortgage statements for residential mortgage loans post-discharge, and Nationstar's mortgage statements were in the approved form. To the extent the FDCPA and/or FCCPA are alleged to prohibit Nationstar from sending the same statements required by TILA, there is a conflict, and Plaintiff's claims are barred.

TILA and Regulation Z require servicers to send periodic statements for each billing cycle. 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(a).[6] The form, content and layout of the periodic statements must include, among other items, an amount due, total of fees or charges imposed since the last statement, and delinquency information. 12 C.F.R. § 1026.41(c)-(d). The

---

[5] To the extent the Court finds that Nationstar has violated the FDCPA or FCCPA (which is denied), Nationstar's argument that 11 U.S.C. § 524 precludes Ms. Galle's FDCPA and FCCPA claim is not foreclosed by the Eleventh Circuit's recent holding in *Johnson v. Midland Funding, LLC*, 2016 WL 2996372 (11th Cir. May 24, 2016). In *Johnson*, the Eleventh Circuit held that 11 U.S.C. § 501(a), which allows creditors in bankruptcy to file proofs of claim for debts that appear on their face to be time-barred, did not preclude liability under the FDCPA for debt collectors who filed proofs of claim for debts that they knew were time-barred. *Id.* The *Johnson* Court found that there was no irreconcilable conflict between 11 U.S.C. § 501(a) and the FDCPA because "[t]he Code establishes the ability to file a proof of claim, while the FDCPA addresses the later ramifications of filing a claim". 2016 WL 2996372, at *5 (internal citations omitted). In contrast, here, there is an "irreconcilable conflict" between 11 U.S.C. § 524 and Ms. Galle's claim that Nationstar violated the FDCPA and FCCPA by sending her information notices after her discharge. There is no dispute that Nationstar would be required under TILA to send Ms. Galle such notices prior to discharge. The question before the Court is whether Nationstar's actions are consistent with the effect of the discharge under 11 U.S.C. § 524. The FDCPA and FCCPA claims are entirely predicated upon the effect of the discharge and the exclusive remedies for violation of the discharge (if a violation is found) are specifically defined in the Bankruptcy Code, thus creating an irreconcilable conflict between 11 U.S.C. § 524 and Ms. Galle's claims. They are, therefore, precluded.

[6] The Consumer Financial Protection Bureau (**CFPB**) has implemented TILA through "Regulation Z". 12 C.F.R. § 1026.1

CFPB has provided form statements and confirmed that use of the forms complies with the content and layout requirements. *Id.* § 1026.41(c).

Though a servicer is exempt from sending periodic statements while a bankruptcy is pending, *id.* § 1026.41(e)(5), once the bankruptcy is dismissed or closed or the consumer receives a discharge, the servicer "must resume sending periodic statements in compliance with § 1026.41 within a reasonably prompt time after the next payment due date . . . ." Official Interpretation to § 1026.41(e) (Official Interpretation may be found at http://www.consumerfinance.gov/eregulations/1026-41/2015-0132#1026-41-e-4-iii-B).

The TILA periodic statement requirement was enacted under § 1420 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, PL 111-203, 124 Stat 1376, 2154 (July 21, 2010), which was made effective January 4, 2014.[7] In determining the circumstances in which a periodic statement would be required, the CFPB fully considered the impact of the Bankruptcy Code and the FDCPA.

> The Bureau understands that certain laws, such as the FDCPA or the Bankruptcy Code, may prevent attempts to collect a debt from a consumer in bankruptcy, but does not believe these laws prevent a servicer from sending a consumer a statement on the status of their loan. The final rule would allow servicers to make changes to the statement as they believe are necessary when a consumer is in bankruptcy; such servicers may include a message about the bankruptcy[125] and alternatively present the amount due to reflect the payment obligations determined by the individual bankruptcy proceeding.
>
> *fn 125. For example, servicers may include a statement such as: "To the extent

---

[7] The effective date of § 1420 is defined by § 1400(c) of the Dodd-Frank Act, which provides that the subsections it governs did not become effective until "either the date on which the final regulations implementing such section, or provision, take effect; or if regulations are not issued for that section, on the date that is 18 months after the designated transfer date." *Id.* at *5. On January 17, 2013, the CFPB issued a final rule implementing the Dodd-Frank Act amendments, including § 1420, setting an effective date of January 10, 2014. *See* Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 10901 (to be codified in 12 C.F.R. Pt. 1026); *see also* Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 62993, 63000-63002 (amending its final rule with respect to § 1420 to include an exemption for debtors in bankruptcy).

your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, Creditor retains rights under its security instrument, including the right to foreclose its lien."

78 Fed. Reg. 10902, 10966.

Following commentary on its proposed final rule, and recognizing the interactions between § 1026.41 periodic statement requirements and the Bankruptcy Code "can be highly varied and complex" the CFPB amended § 1026.41(e) to include an exception for debtors **in bankruptcy**. *See* 78 Fed. Reg. at 63000-63002.

No similar exclusion for borrowers who receive a discharge of their personal liability was added. The only relevant guidance from the CFPB in this situation is that the

> requirement to resume sending periodic statements does not require a servicer to communicate with a consumer in a manner that would be inconsistent with **applicable bankruptcy law** or a court **order in a bankruptcy case**. To the extent **permitted by such law or court order**, a servicer may adapt the requirements of § 1026.41 in any manner believed necessary.

*Id.* (emphases added).

Nationstar's form mortgage statements follow the CFPB approved forms. *Compare* (ECF No. 1, Exs. H, J, K) *with* Appendix H to 12 C.F.R. § 1026 (Form H-30(A) & H-30(B)).

While a servicer may adapt the form as "permitted" by the Bankruptcy Code or bankruptcy court order, this adaption allowance is not at issue because Nationstar's argument is limited to Plaintiff's claim the mortgage statements violate the FDCPA and/or FCCPA not the Bankruptcy Code or a bankruptcy order. The CFPB has previously opined the periodic statement requirement would not violate the FDCPA if the form was adapted by disclaiming an attempt to collect. 78 Fed. Reg. 10902, 10966. Nationstar's statements did just that. (ECF No. 1, Exs. H, J, K). Nationstar's compliance with TILA cannot be the basis of a FDCPA or FCCPA

12

claim.

This Court considered a similar preemption argument in *Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324 (M.D. Fla. 2011). There, the plaintiff argued the defendant violated the FDCPA and FCCPA by sending the plaintiff monthly billing statements after it knew the plaintiff was represented by counsel with respect to the debt. *Id.* at 1327-28. The defendant argued it was required to send the monthly billing statements pursuant to TILA, so it should not be penalized under the FCCPA for its compliance. *Id.* at 1328. This Court found the defendant could comply with TILA "without potentially running afoul of the FCCPA by not including debt collection language" within the monthly statements. *Id.* at 1329. In that case, the defendant's monthly statements included extraneous debt collection language not required by TILA, so the Court denied the motion to dismiss on that basis. *Id.* *Kelliher* is distinguishable because there is no extraneous debt collection language within Nationstar's monthly statements. To the contrary, the subject statements track the approved TILA language. *Compare* (ECF No. 1, Exs. H, J, K) *with* Appendix H to Part 12 C.F.R. § 1026 (Forms H-30(A) & H-30(B)). And, the statements specifically disclaim they are an attempt to demand payment from Plaintiff. (ECF No. 1, Exs. H, J, K).

With regard to preemption of the FCCPA claim, TILA expressly states it does "not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transaction, except to the extent that those laws are inconsistent with the provisions of this subchapter . . . ." 15 U.S.C. § 1610. The FCCPA does not "relate to the disclosure of information in connection with credit transactions". It prohibits particular debt collection communications. FLA. STAT. § 559.72 ("In collecting consumer debts, no person shall . . . ."). Because application of the FCCPA to the communications at issue here is "inconsistent with"

TILA, TILA controls, and Plaintiff's FCCPA (§ 559.72(9)) claim is preempted.

Because there is a direct conflict between Nationstar's requirement to send periodic statements to discharged borrowers and the FDCPA to the extent those same statements are considered improper attempts to collect, the FDCPA has been impliedly repealed, and Ms. Galle's FDCPA (§§ 1692e(2)(A), 1692e(10) & 1692f) claims are precluded. *See e.g., Simon*, 732 F.3d at 262-63 (FDCPA claim precluded by Bankruptcy Code where compliance with the FDCPA would necessarily violate the Bankruptcy Code's automatic stay provision); *Townsend v. Quantum3Group, LLC*, 535 B.R. 415, 429 (M.D. Fla. July 29, 2015) (FDCPA claim for a creditor's failure to register before filing proof of claim precluded where the Bankruptcy Code does not require registration).

## IV. CONCLUSION

Plaintiff's collections-based claims fail as a matter of law. Nationstar was not collecting a debt, but instead providing information, which is not actionable under either the FCCPA or FDCPA. Plaintiff's FDCPA claim is also precluded, and her FCCPA claim is preempted. The complaint should be dismissed entirely and *with prejudice*.

Respectfully submitted,

**AKERMAN LLP**

By: */s/ Marc J. Gottlieb*
    Marc J. Gottlieb (FL Bar No. 827819)
    Las Olas Centre II, Suite 1600
    350 East Las Olas Boulevard
    Fort Lauderdale, FL 33301-2999
    Telephone: (954) 463-2700
    Facsimile: (954) 463-2224
    E-Mail: marc.gottlieb@akerman.com

*Attorney for Nationstar Mortgage LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this 16th day of June, 2016 via the Court's Notice of Electronic Filing on all CM/ECF registered users entitled to notice in this case.

By: /s/ Marc J. Gottlieb
Marc J. Gottlieb