UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARCIA GALLE,

    Plaintiff,

v.                                            Case No:   2:16-cv-00407-FtM-38CM

NATIONSTAR MORTGAGE, LLC,

    Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Defendant Nationstar Mortgage, LLC's Motion to Dismiss Complaint (Doc. #10) filed on June 6, 2016.  Plaintiff Marcia Galle filed a Response in Opposition to Defendant's Motion (Doc. #12) on July 10, 2016.  Thus, Defendant's motion is ripe for review.

## BACKGROUND

In 2008, Plaintiff voluntarily filed a Chapter 7 bankruptcy petition seeking protection from creditors.  (Doc. #1 at ¶ 6).  Pertinent here, one debt listed in Plaintiff's petition was a residential mortgage for $185,219.20 and held by Countrywide Home Loans Servicing LLC ("Countrywide").  (*Id.* at ¶ 7).  Six months later, Plaintiff received an order discharging

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

1

her debts in the Chapter 7 bankruptcy case, including her mortgage with Countrywide. (*Id.* at ¶¶ 12-13).

Approximately four and half years later, Countrywide transferred Plaintiff's discharged mortgage loan to Defendant for servicing. (*Id.* at ¶ 14). Shortly thereafter, Defendant mailed Plaintiff a Mortgage Loan Statement reflecting the mortgage loan at $72,285.75. (*Id.* at ¶ 15). Also, "[t]he Mortgage Loan Statement included a tear-off payment coupon which stated that the total amount due on June 1, 2013, was $72,285.75," and further stated that the amount would be increased by $42.30 if payment was late. (*Id.*).

Believing the debt was discharged, Plaintiff filed an adversary proceeding against Defendant for violations of the discharge injunction provided by the United States Bankruptcy Code, 11 U.S.C. § 524. (Doc. #1 at ¶ 16). The parties thereafter settled the dispute and dismissed the case. (*Id.* at ¶¶ 17, 18). As a material term of their settlement, Defendant agreed to cease and desist from further collection activity. (*Id.* at ¶ 17).

Nevertheless, Defendant continued to send loan statements titled, "Informational Statements," to Plaintiff. (*Id.* at ¶ 19). These statements included a disclaimer that stated the statements were sent only for informational purposes, and not collection of the debt. (Doc. #1 at ¶ 20; Doc. #1-14). The loan statements also included the amount of the outstanding debt, payment due dates, and "a tear-off coupon that Defendant instructed Plaintiff to detach and include with her payment." (Doc. #1 at ¶ 21).

Through counsel, Plaintiff sent a cease and desist letter to Defendant, stating that the debt was no longer valid. (Doc. #1 at ¶ 23; Doc. #1-12). Defendant responded that the loan statements were sent in error and that further statements would be halted. (Doc.

#1 at ¶ 24). Despite Defendant's promise, the error went uncorrected. (*Id.* at ¶ 25). This action followed.

Plaintiff's complaint raises claims under the Florida Consumer Collection Practices Act (FCCPA) and the Fair Debt Collection Practices Act (FDCPA). The crux of Plaintiff's case is that Defendant violated these statutes by sending her loan statements after settlement of the first lawsuit and Plaintiff's cease and desist letter. Defendant now moves to dismiss the complaint in its entirety.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This preferential standard of review, however, does not permit all pleadings adorned with facts to survive the next stage of litigation. The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. See *Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## DISCUSSION

A.  **FDCPA Violations (Counts II-IV)**

Defendant first argues that Plaintiff has failed to state a claim for improper conduct under the FDCPA. (Doc. #10 at 4). In particular, Defendant asserts that the loan statements sent to Plaintiff were informational and not an attempt to collect a debt. (Doc. #10 at 6-7). In response, Plaintiff argues that she has properly pled the necessary elements for stating a cause of action because the loan statements were indeed debt collection activities. (Doc. #12 at 3).

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. To state a plausible claim under the FDCPA, a plaintiff must allege that (1) the defendant is a debt collector; and (2) the challenged conduct is related to debt collection. *Reese v. Ellis, Painter, Ratteree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). At issue here is the latter element; that is, whether the complaint adequately alleges that Defendant engaged in an activity related to debt collection.[2]

Under the FDCPA, debt collectors are prohibited from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt," or employing "unfair or unconscionable means to collect any debt." 15 U.S.C. §§ 1692e, 1692f. "A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the . . . discharge injunction (11 U.S.C. § 524), it is not." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). For the same reasons, "[a] post-discharge demand for payment is thus 'presumptively wrongful' under the [FDCPA].'" *Roth v.*

---

[2] While it is unnecessary at this time to decide whether Defendant is a "debt collector" as the FDCPA defines that term, Defendant does not concede this element and reserves the right to challenge this characterization later.

*Nationstar Mortgage, LLC*, No. 2:15-cv-783-FtM-29MRM, 2016 WL 3570991, at *2 (M.D. Fla. July 1, 2016) (quoting *Randolph*, 368 F.3d at 728)).

Importantly, however, not all discourse between creditors and debtors is prohibited. Communications can have more than one purpose, and provided the exchange is not related to debt collection, the FDCPA remains unoffended. *See Caceres v. McCalla Raymer*, 755 F.3d 1299, 1302 (11th Cir. 2004); *see also Reese*, 678 F.3d at 1217. A communication falls within the prohibited territory only when it conveys information about a debt and its aim is, at least in part, to induce payment. *See Caceres*, 755 F.3d at 1302. In other words, a communication falls under the FDCPA when its animating purpose is to induce payment by the debtor. *See Roth*, 2016 WL 3570991 at *2 (citing *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1281 (M.D. Fla. 2015)).

Whether a communication's animating purpose is to induce a debtor to pay is determined through the eyes of the "least sophisticated consumer." *Caceres*, 755 F.3d at 1303; *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). To make this determination, the district court "look[s] to the language of the [communication] in question, specifically to statements that demand payment [and] discuss additional fees if payment is not tendered[.]" *Pinson v. Albertelli Law Partners, LLC*, 618 F. App'x 551, 553 (11th Cir. 2015) (citations omitted). The pertinent question is whether "the least sophisticated consumer" would believe that the sender was attempting to induce payment on a debt. *See Roth*, 2016 WL 3570991 at *3.

Turning to the loan statements at issue, the Court finds that the Complaint sufficiently alleges that the statements constitute an attempt to collect a debt. The

statements lists payment due dates, amounts due, and explanations of amounts payable, possible payment methods, and it states that a late fee will be charged for untimely payment. Moreover, the statements contain an "Important Messages" box advising that Plaintiff has a negative escrow balance and recommending Plaintiff makes additional payments to escrow. (Doc. #1-14 at 5). Finally, the statements include a detachable "Voluntary Payment Coupon," which lists the total amount due and instructs Plaintiff to make payment "payable to Nationstar Mortgage." (Doc. #1-14 at 5). This Court has previously found that similar loan statements reflect an attempt to collect a debt. *See Roth*, 2016 WL 3570991 at *3.

Defendant, for its part, argues that because the loan statements contain a disclaimer, they fall outside the prohibited category. (Doc. #10 at 6-7). This argument has some basis in current case law. *See Helman v. Urden Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1327 (S.D. Fla. 2014) (explaining that where a disclaimer is prominently displayed and makes clear that a monthly statement is not an attempt to collect a debt, the communication is merely informational and therefore not in violation of FDCPA). The Court is unconvinced, however, that this exception applies here. Fine print and one-sentence disclaimers, like that here, have generally been found to be insufficient to shield creditors from liability. *See Roth,* 2016 WL 3570991 at *4; *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, No. 8:15-cv-2380-T-33TGW, 2016 WL 409633, at *6 (M.D. Fla. Feb. 3, 2016) (citations omitted). Furthermore, language indicating that a statement is for "informational purposes only" is not effective where the statement also includes a due date, amount due, payment address, and detachable payment coupon. *See*

*Ocwen Loan Servicing, LLC*, No. 6:11-cv-445-ORL-19, 2011 WL 1706889, at *5 (M.D. Fla. May 5, 2011).

In light of the foregoing, the Court concludes that it is plausible that the least sophisticated consumer would construe the statements here as attempts to collect on the mortgage debt. Therefore, Defendant's request to dismiss Counts II-IV is denied.

**B.     FCCPA Violation (Count I)**

Next, Defendant argues that Plaintiff's FCCPA claim should fail for the same reasons the FDCPA claims fail. (Doc. #10 at 8). Defendant's argument on this point is limited to the effectiveness of the disclaimer contained in the loan statements. (Doc. #10 at 8; Doc. #1-14).

The FCCPA is the state law counterpart to the FDCPA. *See Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010). It likewise prohibits a debt collector from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate[.]" Fla. Stat. § 559.72(9). The FCCPA is construed in accordance with the FDCPA. *See Oppenheim*, 627 F.3d at 836.

As to Plaintiff's FCCPA claim, Defendant focuses on the effectiveness of the disclaimer contained in the loan statements, reiterating its argument that this language was sufficient to avoid liability. (Doc. #10 at 8; Doc. #1-14). For the same reasons discussed above, the Court is unconvinced. The least sophisticated consumer reading the statements would no doubt be left with the impression that Defendant was involved in debt collection. Accordingly, the Court denies Defendant's motion to dismiss Count I.

**C.     Preclusion/Preemption**

Defendant also seeks dismissal of Plaintiff's Complaint on grounds that her claims are preempted or precluded by 11 U.S.C. § 524 and The Truth in Lending Act, 15 U.S.C. § 1601 (TILA).  The Court finds neither argument convincing.

Regarding the Bankruptcy Code, Defendant argues that Plaintiff's FDCPA and FCCPA claims are attempts to plead around the controlling provision of the Bankruptcy Code, 11 U.S.C. § 524, which does not provide for a private right of action.  (Doc. #10 at 8).  Plaintiff responds that, while the Bankruptcy Code does not provide a private right of action, there is no conflict between its provisions and the FDCPA and FCCPA.  (Doc. #12 at 16-17).

"Where two federal statutes conflict, a cause of action provided by one statute may be precluded by the provisions of the other."  See *Johnson v. Midland Funding*, LLC, No. 15-11240, 2016 WL 2996372, at *4 (11th Cir. May 24, 2016) (citation omitted).  A later statute will impliedly repeal an earlier statute where there is an "irreconcilable conflict" between the two.  See *id.* (citation omitted).  The FDCPA and the Bankruptcy Code are not in irreconcilable conflict because they differ in scope, goals, and coverage, and can be construed together in a way that allows them to coexist.  See *id.* at *5 (citation omitted).  In particular, the Bankruptcy Code applies to "creditors," while the FDCPA applies only to "debt collectors" both within and outside of bankruptcy.  See *id.*  Moreover, because a debt collector can open itself up to FDCPA liability while acting in a way the Bankruptcy Code permits, the fact that a debt collector can be sued under the FDCPA but not the Code does not create an irreconcilable conflict.  See *id.* at *6.

The same rationale applies to the FCCPA. See *Hernandez v. Dyck-O'Neal, Inc.*, No. 3:14-cv-1124-J-32JBT, 2015 WL 2094263, at *4 (M.D. Fla. May 5, 2015). A debtor's choice to pursue the remedies provided in the FCCPA does not stand as an obstacle to the objectives of Bankruptcy Code when the complained of conduct occurred post-discharge. See *id.*; see also *Leahy-Fernandez*, 2016 WL 409633 at *6.

Based on the foregoing, it is clear that Plaintiff may pursue remedies under the FDCPA and FCCPA that are not provided by the Bankruptcy Code. Moreover, Defendant sent the loan statements to Plaintiff subsequent to a discharge of her mortgage debt. Accordingly, the Court rejects Defendant's argument that the Code preempts or precludes Plaintiff's FDCPA and FCCPA claims.

Turning next to TILA, Defendant argues that Plaintiff's claims are preempted under TILA, 15 U.S.C. § 1601 *et seq.*, as implemented through "Regulation Z," 12 C.F.R. § 1026.1. In part, TILA requires a mortgage loan servicer to send periodic statements for each billing cycle. 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(a). Those statements must include the amount due, total fees or charges imposed, and delinquency information. See 12 C.F.R. § 1026.41(c)-(d). Defendant argues that, because the loan statements are required under TILA, Plaintiff's FDCPA and FCCPA claims are barred.

The Court disagrees. TILA does not require Defendant to send Plaintiff the loan statements at issue. See *Roth*, 2016 WL 3570991 at *7. "The Bureau of Consumer Financial Protection has clarified that a periodic statement is not required for mortgage debts discharged in bankruptcy proceedings." *Id.* (emphasis removed) (citations omitted). Here, Plaintiff alleges that she surrendered her property during bankruptcy proceedings, and the mortgage debt was discharged. The Court thus finds that

Defendant did not have to send the periodic statement in order to comply with TILA and rejects Defendant's argument that TILA bars Plaintiff's claims.

Accordingly, it is now

**ORDERED**

Defendant Nationstar Mortgage, LLC's Motion to Dismiss Complaint (Doc. #10) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on this 28th day of July 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record